UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10403DPW

| | |
|---|---|
| LLOYD F. AUDETTE,<br>    Plaintiff, | )<br>)<br>) |
| V. | )<br>) |
| UMASS CORRECTIONAL HEALTH,<br>    A Commonwealth Medicine Program,<br>    Defendant, and | )<br>)<br>)<br>) |
| DEPARTMENT OF CORRECTON<br>    Kathleen M. Denney, Commissioner,<br>    Defendant. | )<br>)<br>) |

**DEFENDANT, UMASS CORRECTIONAL HEALTH'S,
RESPONSE/OPPOSITION
TO PLAINTIFF'S MOTION FOR
TEMPORARY EX PARTE RESTRAINING ORDER**

NOW COMES the defendant, UMASS Correctional, in the above entitled matter, and hereby responds to this Court's request for a response to plaintiff's Ex Parte Restraining Order.   The defendant states that plaintiff's Motion was properly denied because plaintiff is unlikely to succeed on the merits of the statutory and civil rights claims which form the basis of this lawsuit.   The plaintiff's medical conditions have been treated appropriately at all times.   The defendant was not deliberately indifferent to plaintiff's serious medical needs and UMCH did not exclude plaintiff from participating in any available medical programs.   As such, the Plaintiff's Motion for a Temporary Ex Parte Restraining Order was properly denied.

**PROCEDURAL BACKGROUND**

1.      This is a civil action in which the plaintiff, Lloyd Audette, a pro se prisoner at Souza-Baranowski Correctional Center ("SBCC"), alleges claims of statutory and civil rights violations against the defendant, UMASS Correctional Health ("UMCH").

2.      The Complaint, which was filed on February 24, 2005, alleges that plaintiff suffered psychological and emotional distress and physical pain as a result of defendant's acts and omissions regarding the medical treatment of his HIV and ankle injury.

3.      Since the filing of the Complaint, defendant continuously provided plaintiff with adequate medical care.

4.      Plaintiff filed a Motion for a Temporary Ex Parte Restraining Order, requesting that the defendant immediately provide him with Rockport walking shoes, testosterone injections, oxandorlone medication, Resource four times each day, and 80 mg. of methadose each day.  (See Exhibit 1 attached, plaintiff's Motion for TRO, ¶1-5).

5.      While Justice William G. Young, of the USDC District Court of Massachusetts already denied plaintiff's Motion on March 7, 2005, defendant now responds to plaintiff's Motion at the request of a new judge, Justice Douglas P. Woodlock.

**RELEVANT FACTS**

1.      Plaintiff is a pro se prisoner, incarcerated at Souza-Baranowski Correctional Center ("SBCC").   Plaintiff Audette suffers from AIDS, Hepatitis C,

Zollinger Ellison Syndrome and has undergone numerous orthopedic surgeries for his left foot.  (See Exhibit 2 attached, Complaint ¶6).

2.    As a result of plaintiff's AIDS condition, he has lost a substantial amount of weight since his transfer to the SBCC facility.  (Exhibit 2, ¶16).

3.    Plaintiff's Motion for a Temporary Ex Parte Restraining Order requests that this Court order the defendant to do the following: 1.) buy plaintiff Rockport shoes; 2.) start plaintiff on testosterone injections; 3.) start plaintiff on oxandorlone medication; 4.) give plaintiff Resource four times each day; and 5.) increase plaintiff's methadose to 80 mg. each day.  (Exhibit 1, ¶1-5).

4.    Defendant has provided plaintiff with adequate and appropriate medical treatment for his HIV and left foot injury.  (See Exhibit 3 attached, medical records).

5.    Specifically, regarding plaintiff's request for special shoes, defendant sent Mr. Audette to podiatrist, Dr. King, on January 18, 2005.  (Exhibit 3, in-house consultation requisition).  During Dr. King's treatment of plaintiff's left foot, Mr. Audette was diagnosed with a bone spur.  Id.  Dr. King *recommended* that *plaintiff* purchase Rockport walking shoes from the DOC Canteen.  Id.  However, Dr. King did not write plaintiff a physician's order, requesting that the DOC buy these shoes for Mr. Audette.

6.    In response to Dr. King's recommendation, defendant ordered the necessary Rockport shoes for the DOC Canteen.  (See Exhibit 4 attached, Affidavit of Jim Bello ¶5).  These shoes are now available in the Canteen, and plaintiff can *buy the shoes for himself*, at his discretion.  Id.

7.    Plaintiff also requests that defendant give him testosterone injections every two weeks to help him gain weight. (Exhibit 1, ¶2).  Specifically, on February 14,

2005, plaintiff asked SBCC's Nurse Bower to send him for an endocrinology consult so that he can be put back on the testosterone treatments. (Exhibit 3, progress notes).

8.      Defense counsel has been informed that Dr. Stone, at the Infectious Disease Clinic, is concerned with plaintiff using testosterone (a steroid) because of his history of HIV and Hepatitis C. Moreover, plaintiff's records support that Mr. Audette was not receiving testosterone when he arrived at SBCC in February of 2004. (Exhibit 3). Nevertheless, the defendant scheduled an appointment for the near future[1], for Mr. Audette to meet with an outside endocrinologist, where he will be evaluated for Testosterone therapy. (Exhibit 4, ¶6).

9.      Mr. Audette's third request is that defendant place him on Oxandorlone, another anabolic steroid, like testosterone. (Exhibit 1, ¶3). It should be noted that there is no evidence in the medical records indicating that plaintiff has ever requested or discussed this drug with the Health Service Unit at SBCC. (Exhibit 4, ¶7). Nevertheless, the defendant also arranged for the endocrinologist to discuss this medication with the plaintiff on his upcoming visit. Id.

10.     Plaintiff's fourth request in his Motion for a Temporary Ex Parte Restraining Order, asks that UMCH give him the dietary supplement Resource four times each day, rather than the two time currently offered. (Exhibit 1, ¶4).

11.     During plaintiff's incarceration at SBCC, nutritionist and Registered Dietician, Susan Bingham-Isaac, has been following his condition on a regular basis. (Exhibit 3, progress notes). Specifically, Bingham-Isaac ordered that plaintiff to be given Resource twice a day, and that in addition to his regular diet, plaintiff get a morning and

---

[1] Due to security concerns, DOC policy dictates that the exact date of the off-site consult not be provided in advance.

evening snack. (Exhibit 3, progress notes). Ms. Bingham-Isaac reviews plaintiff's condition twice a month, and, based on her independent judgment, recommends that two doses of Resource and the current diet is sufficient to help plaintiff gain weight.

12.    Mr. Audette currently receives 40 mg. of methadose medication each day, to treat his pain. (Exhibit 3, physician's order). Plaintiff's last request asks that defendant increase the methadose medication to 80 mg. each day. (Exhibit 1, ¶5). Audette also currently takes the antiviral drugs, Sustiva and DDI, to treat his Hepatitis C disease. (Exhibit 3, physician's order).

13.    After plaintiff requested the methadose increase, defendant consulted with the infectious disease specialist, Dr. Stone. (Exhibit 4, ¶8). Dr. Stone explained that existing literature warns increasing plaintiff's dose of methadose may affect the efficacy of the Sustiva and DDI drugs. Id. Given the doctor's concern, plaintiff is scheduled to meet with Dr. Stone at the Infectious disease clinic on April 4, 2005 to discuss Audette's request. Id.

## INJUNCTIVE RELIEF STANDARD

To obtain a temporary restraining order the moving party must demonstrate that, without the requested relief, it would suffer irreparable harm, not capable of remediation by final judgment in law or equity. Commonwealth v. Massachusetts Crinc, 392 Mass. 79, 87 (1984); Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 617, n.11 (1980). The moving party must also show that there is a likelihood that it would prevail on the merits of its claim at trial. Commonwealth v. Massachusetts Crinc, 392 Mass. at 87. The motion judge must then balance these two factors against a showing of irreparable harm which would ensue from the issuance, or denial, of an injunction and the

"chance of success on the merits" presented by the opposing party.  Id.; Packaging Industries Group, Inc., 380 Mass. at 616-617.  When the balance of hardship measured in the light of the legal merits cuts in favor of the moving party, it is entitled to a preliminary injunction.  Commonwealth v. Massachusetts Crinc, 392 Mass. at 617.

Plaintiff Audette will be unable to establish a deliberate indifference to a serious medical need, in violation of his civil rights.  Plaintiff will also not be able to establish that the defendant excluded him from participation in the SBCC's services, programs, or activities by reason of his disability.

The medical records attached hereto reflect that Mr. Audette has received extensive medical evaluations and care and treatment for his AIDS and his left foot. (Exhibit 3).  Defendant has and continues to send plaintiff to various doctors for treatment and evaluation, such as Dr. Stone and Dr. King.  Defendant also provided plaintiff with a nutritionist who monitors his diet, ensuring that his weight does not drop any further.  These courses of treatment cannot possibly be categorized as "repugnant to the conscience of mankind" or "an unnecessary and wanton infliction of pain."  Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).  The medical records also clearly demonstrate that the defendant *included* plaintiff in all of the AIDS treatment programs offered by UMCH. Defendant also provided surgical and treatment options for Mr. Audette's foot injury.

WHEREFORE, for the foregoing reasons, the defendant respectfully suggests that the denial of plaintiff's Motion for a Temporary Ex Parte Restraining Order was appropriate.

Respectfully submitted,
The Defendant,
UMASS CORRECTIONAL HEALTH,
By its attorneys,

**/s/ James A. Bello**

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail on this **28**th day of **March**, 2005

/s/ James A. Bello

_____
James A. Bello / Lisa R. Wichter

_____
James A. Bello, BBO# 633550
Lisa R. Wichter BBO# 661006
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
(617) 439-7500

960809v1

# <u>EXHIBIT 1</u>

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

FILED
CLERKS OFFICE

2005 FEB 24 P 1:58

NO._____

U.S. DISTRICT COURT
DISTRICT OF MASS

LLOYD F. AUDETTE,
    Plaintiff,

v.

UMASS CORRECTIONAL HEALTH,
    A Commonwealth Medicine Program,
    Defendant, and

DEPARTMENT OF CORRECTION,
    Kathleen M. Dennehy, Commissioner,
    Defendant,

05-10403 DPW

## MOTION FOR TEMPORARY EX PARTE RESTRAINING ORDER

Now comes the Plaintiff in the above entitled matter and respectfully requests pursuant to Fed. Rules of Civ. P. R. 65 that this Honorable Court issue an immediate ex parte temporary restraining order ordering the defendants to:

1.    immediately supply the plaintiff with the Rockport walking shoes that were ordered by the podiatrist.

2.    immediately start the plaintiff on testosterone injections of 1 ml. (200 cc.) every two weeks the same as the plaintiff was receiving from the Greater New Bedford Community Health Center before his incarceration which was used to assist him in gaining his body weight and maintaining it because plaintiff suffers from AIDS and experiences waisting syndrome body weight loss when not receiving deletestoral testosterone injections.

3.    immediately start the plaintiff on oxandorlone, 5mg. bid (twice per day) which he was receiving from the Greater New Bedford Community Health Center before his incarceration which was used in conjunction with the testosterone to maintain and control his body weight waisting problem.

1.

4.   immediately supply the plaintiff with the dietary suppliment Resource four times per day rather than two times per day, which is what the plaintiff was prescribed by the Greater New Bedford Community Health Center before his incarceration to assist in controlling his weight waisting problem.

5.   immediately increase the plaintiff's pain medication in accordance with the pain management medication the plaintiff was receiving by the Greater New Bedford Community Health Center before his incarceration. (i.e. methadose of 80 mg. per day/ or fetinal patches of 75 IEU to be overlapped every two days with 5 mg. oxycodone QID [four times per day] to break through the pain)

6.   to continue with these orders until a hearing can be scheduled for an injunction issuing permanent injunctive relief, and where at said hearing the court can subpoena all of the plaintiff's medical records from the Greater New Bedford Community Health Center as well as from the Department of Correction and have its own unbiased physician make a determination regarding the plaintiff's medical treatment.

7.   refrain from any possible present or future retaliation against the plaintiff for pursuing legal recourse against the defendants.

8.   appoint an arbitrator to check and verify that all the orders of the court are being upheld and followed by the defendants.

9.   any further relief in this form as this court deems necessary.

Wherefore, Plaintiff requests that this TRO be granted immediately ex parte.


Dated:  2-16-05

                                    Respectfully submitted,
                                    By the Plaintiff,

                                    _Lloyd F. Audette_
                                    Lloyd F. Audette,
                                    Pro-se
                                    S.B.C.C./P.O. Box 8000
                                    Shirley  MA  01464

                        2.

# **EXHIBIT 2**



COPY

UNITED STATES OF AMERICA
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2005 FEB 24 P 1:58
U.S. DISTRICT COURT
DISTRICT OF MASS

NO. _____

LLOYD F. AUDETTE,
 Plaintiff,

v.

UMASS CORRECTIONAL HEALTH,
 A Commonwealth Medicine Program,
 Defendant, and

DEPARTMENT OF CORRECTIONS,
 Kathleen M. Dennehy, Commissioner,
 Defendant,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

05-10403 DPW

VERIFIED
COMPLAINT

*Referred to Ch MJ MBBal*

**VERIFIED COMPLAINT**
**INTRODUCTION**
**JURISDICTION**

1. This is an action to redress the deprivation by the defendants of rights secured by the plaintiff by the Constitution and laws of the United States and Commonwealth of Massachusetts, specifically;  The Americans with Disabilities Act Title II of 1990, 42 U.S.C.  §§  12101 et. seq., as amended;  Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794; 42 U.S.C. 1983; and the Eighth Amendment of the United States Constitution while defendants were acting under color of state law.  Jurisdiction is 28 U.S.C. 1331 and others where Plaintiff is state prisoner seeking relief against medical neglect and malpractice by prison officials acting under color of state law.

1.

2.   This complaint seeks immediate injunctice relief, a temporary restraining order, permanent injunctive relief, and monetary damages for pain and suffering, deliberately caused by the defendants, punative damages and compensatory damages all totalling ten million dollars ($10,000,000).

## PARTIES

3.   The Plaintiff, Lloyd F. Audette (Mr. Audette), is a Massachusetts resident presently incarcerated at the Massachusetts Correctional Institution at Shirley (S.B.C.C.), Souza Baronowski Correctional Center, maximum security prison.

4.   The Defendant, UMASS CORRECTIONAL HEALTH, A Commonwealth Medicine Program, is the health services provider for the Department of Corrections, Massachusetts whose office is located at "Medical Director", UMASS Correctional Health, One Research Drive—Suite 120C, Westborough, MA 01581.

5.   The Defendant, Department of Correction, whose commissioner is Kathleen M. Dennehy, houses and regulates inmates sentenced to the Massachusetts Correctional Institutions and is responsible for enforcing its regulations and ensuring that its employees obey the laws of the Commonwealth of Massachusetts and the United States. The Commissioner's office is located at 50 Maple Street, Suite no. 3, Milford, MA 01757-3698.

2.

## FACTS

6.    The plaintiff, Mr. Audette suffers from AIDS, Hepatitis C, Zollinger Ellison Syndrome, a poliglandular disorder of the endocrine system, and has had a total of ten (10) orthopedic surgeries where his left foot was reconstructed twice, right ankle reconstructed twice, left knee scoped twice, right wrist reconstructed twice, right hand, flexor tendons reconstructed twice as well as two episodes of internal bleeding which left his stomach lining deteriorated, esophagus and duanodinal bulb deformed.

7.    Prior to Mr. Audette's incarceration he was being treated by the Greater New Bedford Community Health Center, New Bedford, Massachusetts and was receiving the AIDS cocktail, high doses of stomach medication, for pain Mr. Audette received 75 IEU Fetinal patches to be overlapped every two days instead of three, (extremely strong doses),  5mg. oxycodine to be taken four times a day to break through the pain and received methadose 80 mg. per day from the methadose clinic to assist in the pain management, Mr. Audette also received anabolic steroid treatment to keep his weight stable, testosterone injections of 1 ml. (200 cc.) every two weeks along with oxandrolone 5 mg. twice per day, he also received four servings of ensure per day, a dietary suppliment to gain weight.

3.

8.  Mr. Audette wore Rockport walking shoes because of his left foot reconstruction and when he became incarcerated he was wearing a pair of $130.00 Rocksport by Rockport cross-training walking shoes.

9.  Mr. Audette had all the relevant medical files updated and forwarded to the House of Correction where he awaited trial and those records were forwarded to the Massachusetts Department of Corrections verifying all the medications and treatment Mr. Audette was receiving prior to his incarceration.

10.  While housed at the Norfolk Correctional Institution after being sentenced, the medical staff there refused all pain medication, treatment for Hepatitis C, Surgery for left knee, dietary suppliment, and testerone and oxandrolone treatment.

11.  Mr. Audette filed medical grievances and after waiting more than a year after receiving an MRI of the left knee and filing another grievance was his left knee finally operated on, while he was housed at M.C.I. Shirley/S.B.C.C..

12.  After being transferred to Souza Baronowski Correctional Institution, Mr. Audette's Rockport walking shoes were confiscated by staff at Norfolk and contrabanded, and he was also prescribed oxycodone and given the wrong medication for months that caused harm to his liver (percosets never prescribed).

4.

13. Mr. Audette filed grievances regarding his numerous health issues and lack of treatment, finally he was seen by the podiatrist who ordered the institution supply him with Rockport walking shoes.

14. The institution refused to supply Mr. Audette with Rockport walking shoes and Mr. Audette filed a medical grievance.

15. Mr. Audette had to file several grievances and wrote letters of complaint to the Commissioner of Correction regarding his lack of treatment for pain, finally after suffering for over one year he now receives 40 mg. of methadose per day for pain.

16. Mr. Audette has lost approximately forty (40) pounds body weight because he is not receiving testosterone and oxandrolone and the medical staff, nurse in charge of infectious desease is and has tried to no avail to have testosterone prescribed for Mr. Audette.

17. Mr. Audette has been seeing the dietician/nutritionist on a bimonthly basis to monitor his rapid, uncontrollable weight loss and she had prescribed a.m. snacks (extra milk, cereal, and a piece of fruit) as well as p.m. snacks along with suppliments of resource dietary suppliment twice a day and cannot understand why Mr. Audette is continuing to lose weight and

5.

has informed Mr. Audette that she did relay her concerns to
the infectious disease nurse and suggest that the institution
start testosterone therapy.

18.  Mr. Audette is continueing to suffer with great pain in
his left foot because the institution is refusing to provide
the proper orthopedic footware although it was ordered by the
podiatrist and the pain medication that Mr. Audette is receiving
is minimal at best (40 mg. methadose per day-20 mg. in the a.m.
and 20 mg. in the p.m.), and not receiving HIV meds on time.

19.  The institution and health services department has made
Mr. Audette continually file grievances and complaints to receive
the minimum care causing him to suffer great emotional distress
and pain as well as physical pain and this is and has been an
ongoing problem for over two years steady.

20.  While Mr. Audette was housed at M.C.I. Norfolk and not
receiving any pain medication therapy he was forced to obtain
illicit narcotics and was arbitrarily removed to a higher security
level when he refused to provide a urine specimen and blood
for a toxicollogy screen.

21.  Just before Mr. Audette was reclassified to a higher security
level for refusing to provide the security team at Norfolk with

6.

a urine specimen and blood sample the IPS (Interperimeter
Security) team leader, Sgt. Fico had the infectious desease
nurse at M.C.I. Norfolk force Mr. Audette to provide a urine
specimen under threat of being taken off all HIV medications
if Mr. Audette refused to provide security with said urine.

22.  The urine that Mr. Audette did provide did not show any
illegal or illicit narcotic substances in it but Mr. Audette
was still sanctioned and moved to a higher security level
under the guise of refusing to provide a urine specimen because
Mr. Audette is deemed 100% disabled by the Social Security
Administration and he continually complained about the lack
of medical treatment he was receiving.

## DAMAGES

23.  As a direct and proximate result of the acts and omissions
of the defendants herein described, the plantiff has suffered
injuries, including a deprivation of rights of life and liberty,
severe psychological and emotional distress, great physical
pain and suffering, loss of approximately one third of his
body weight, and other consequential damages and should be
compensated with monetary damages, injunctive relief, both
in the form of a temporary restraining order, injunction and
permanent injunction ordering the defendants to immediately
start the plaintiff of anabolic steroid (testosterone and
oxandrolone) treatment, adjust plaintiff's pain management

7.

dosage to a higher and more reasonable amount and further order the defendants to immediately provide the plaintiff with the proper footware at no cost to the plaintiff.

## COUNT I

### CLAIM FOR RELIEF UNDER THE AMERICAN DISABILITIES ACT TITLE II OF 1990, 42 U.S.C. §§ 12101 et. seq.

The Plaintiff Lloyd F. Audette repeats and reasserts the allegations contained in paragraphs 1 through 23 as though fully set forth herein.

24.  In their actions, the defendants acted as officers exercising judicial functions and as health care providers while acting under color of state law when they subjected the plaintiff to suffer due to their intentional and wanton neglect to provide services for a physical impairment in accordance with Title II of the ADA 2.2000; Physical impairment-cosmetic disfigurement; or anatomical loss of specific example included orthopedic, HIV, both symptomatic and asymptomatic and their decision in doing so was arbitrary and capricious with reckless disregard for human life and the suffering they caused.

## COUNT II

### CLAIM FOR RELIEF UNDER THE REHABILITATION ACT of 1973, as amended, 29 U.S.C. 794

The Plaintiff Lloyd F. Audette repeats and reasserts the

8.

Lloyd F. Audette for compensatory and punitive damages upon the following grounds:

    (a)    violation of his right under the American Disabilities Act;

    (b)    violation of his rights under Section 504 of the Rehabilitation Act of 1973;

    (c)    violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the Constitution of The United States;

    (d)    wanton and reckless disregard to the plaintiff's medical needs and treatment causing the plaintiff to suffer both emotional and physical pain as well as great weight loss and placing the plaintiff in a more serious symptomatic catagory of AIDS due to their neglect, by also not providing HIV meds.

### CLAIM FOR RELIEF UNDER THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION

The Plaintiff Lloyd F. Audette repeats and reasserts the allegations contained in paragraphs 1 through 26(a) through(d) as though fully set forth herein.

27. The defendants violated the plaintiff's eighth amendment rights when they refused him proper and adequate medical treat-

10.

them from harming the Plaintiff by not providing
him with the prescribed footware, and ordering the
defendants to provide the Plaintiff with testosterone
and oxandrolone treatment to bring his body weight
back up.

VI.   Award the Plaintiff:

   (a)   compensatory damages against Defendants,
         jointly and severally, in an amount provided
         at trial for which the Plaintiff is requesting
         a total of ten million dollars for all damages
         combined;

   (b)   punitive damages against the individual defend-
         ants, jointly and severally, in an amount provided
         at trial;

   (c)   costs of any litigation fees, including reasonable
         attorney fees as provided by 42 U.S.C. § 1983
         should the plaintiff retain counsel or in the
         alternative paralegal fees in the amount of
         $35.00 per hour due to the duress and stress
         it will cause the Plaintiff in his unfit
         condition of health to pursue this complaint.

VII.  Order such other and further relief as the court
      deems just and appropriate.

### VERIFICATION

I Lloyd F. Audette do hereby verify that I am the Plaintiff
in this action and all statements contained herein are true
and accurate to the best of my knowledge.

Signed under the penalties of perjury on this *16 th* day of *February*
2005.

_Lloyd F. Audette_
Lloyd F. Audette

Respectfully submitted,
By the Plaintiff,

_Lloyd F. Audette_
Lloyd F. Audette, pro-se
S.B.C.C./P.O. Box 8000
Shirley MA  01464

12.

# **EXHIBIT 3**

# UMASS CORRECTIONAL HEALTH

## "IN HOUSE" CONSULTATION REQUISITION

Institution: _SBCC_

Name: _Audette Lloyd_    ID# _W80971_    D.O.B.: _12/31/58_

Request Date: _12/20/04_

### SPECIALTY AREA (circle)

Dental          Dietary          Optometry          Mental Health          _____ Urgent

_____ Routine

On Site Clinics:      Orthopedics      (Podiatry)      Surgical      Other _____

**To Be Completed By Referring Physician**

Reason for Consultation (present illness and history - include summary of current problems(s) MEDS, x-ray and lab studies, etc.)

_Bony Prominence dorsal @ foot_
_? pudding_

MARK SCHNABEL, NP

Referring Physician: _____

(Signature & Stamp)

**To Be Completed By Consulting Physician**

Findings (Problems, Diagnosis) and Recommendations (Therapy, Meds & Studies)

S _[illegible handwriting]_

O _[illegible handwriting]_

A _bone spur_

P _[illegible handwriting]_

Consulting Physician: _____, NP _1/18/05_    (Print Name)

MARK SCHNABEL, NP

Date: _____

Final Diagnosis: _bone spur @ DSP_

8031 Rev. 4/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

Institution: SBCC

NAME: Audette, Lloyd          ID # W80971     D.O.B. 12/31/58

| DATE | TIME | NOTES |
|------|------|-------|
| 2/14/05 | 1320 | I/M seen in H/U OPD for weekly Peg Injection. I/M has c/o ↓ wt. ↓ since before starting Hep Rx. I/M was 178# @ intake to SBCC 2/04 - 5/04 - 172#, 8/3/04 178#, 8/24/04 172#¼ (ortho surgery 8/13/04) 10/04 - 164½; started Hep Rx 1/10/05 - wt. 160#, today 2/14/05 155#. I/M requesting endo consult - would like to be put back on testosterone Rx. Will discuss c̄ MD.          ~ M. Bower RN |

7113W 1/95

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: _Audette Lloyd_    ID # _W80977_    D.O.B. _12/31/58_

| DATE | TIME | NOTES |
|------|------|-------|
| 2/3/05 | 2000 | I/m not happy with Lotion says it irritates his hand. Says I Deborah Costa Don't Know how to follow up orders. When lotion was given I/m was informed that there wasn't any Eucerin cream but that lotion was available. I/m agree to taken this lotion on 1/31/05. I/m stated that he was allergic to alcohol products and that I should Know that. I/m was not Happy with Results _____ |
| 2/8/05 | 1430 | Follow up: AHO, Neu. wt✓ wt 149/127 ↓ θ ↓, diarrhea, I/m states eats all his breakfast, quells @ lunch, ↑ dinner. On Resource bid — 500 Kcalories and pro cells bid - also 300 Kcal. Should not be ↓ wt. I/m very Focused re need for testosterone and study @ UHH. Once again explained he needed to discuss ē up. Fu 3 wks. ————— S Bingham Diane MS RN LCN |

# UMASS CORRECTIONAL HEALTH

## PROGRESS NOTES

SBCC
Institution

NAME: Dudek, Lloyd     ID # W80971     D.O.B. 12/31/58

| DATE | TIME | NOTES |
|------|------|-------|
| | | IDM                                    todays wt 149# |
| 2/21/05 | 1420 | Seen in HU for peg injection. C/o not receiving AM + PM snack as ordered by NP on 2/16/05. Will refax to kitchen to order - Will also call Died (Kitchen co) RIT order. ~ M Bowen RN |
| 2/26/05 | 1540 | Refaxed orders for AM-PM snack to kitchen ~ M Bowen |
| 2/28/05 | 1325 | Peg Injection given today - todays wt is 148# No complaints @ this time ~ M Bowen RN |
| 3/1/05 | 1130 | Follow-up: wt ~ wt 148 1/2# ~ Inc now rec snack bid. S/R having difficulty. RD Will send note to FS. State takes supplement, eats snacks and "forces" food even if he dislikes or if not hungry. ? need for MD/NP evaluation. Will discuss c PD case manager (2/05) TSH = NL, ? FBS. Inc c wk ~ A Bingham ~~~~ MS RD/LDN |

**UMASS CORRECTIONAL HEALTH**
**DIET ORDER FORM**

_SBCC_

Name _Claudette Lloyd_    ID# _W88971_    DOB _12·31·58_    Institution

Date Diet Begins: _2/10/05_

1. **Therapeutic diets not specified below can only be developed through consult with a dietitian.  Please contact a dietitian directly.**

2. **Diet orders shall remain in effect until discontinued by a physician.**

**THERAPEUTIC DIETS**

___    Mechanical [check one]:

_____    Ground

_____    Pureed

___    1800 A.D.A. with PM Snack

___    2200 A.D.A. with PM Snack

___    2500 A.D.A. with PM Snack

___    Clear Liquid*

___    Full Liquid*

___    Pre-Dialysis [2 gm Na, 2 gm Potassium, 60 gm Protein]

___    Dialysis [2 gm Na, 2 gm Potassium, 90 gm Protein, 1500 cc Fluid Restriction]

___    Pregnancy

_✗_    Nutritional Support Snack    _PM Snack_

*Consultation with Registered Dietitian required if diet is for
more than 3 days

Physician Signature _Arguson mup_    Date _2·10·05_

| | |
|---|---|
| ORIG. - Medical Record | Sent to Food Service Dept  _Bev_  _2/14/05_ |
| PINK - Dietitian | _Name_  _Date_ |
| YELLOW - Food Services | Received by Food Service Dept  _Name_  _Date_ |

8030 Rev. 8/96

**UMASS CORRECTIONAL HEALTH**
**DIET ORDER FORM**

_8B C._
Institution

Name _Audette, Lloyd_  ID# _W8097_ /DOB _12/31/58_

Date Diet Begins: _2/16/05_

1. Therapeutic diets **not** specified below can only be developed through consult with a dietitian.  Please contact a dietitian directly.

2. Diet orders shall remain in effect until discontinued by a physician.

**THERAPEUTIC DIETS**

\_\_\_    Mechanical [check one]:

\_\_\_\_\_ Ground

\_\_\_\_\_ Pureed

\_\_\_    1800 A.D.A. with PM Snack

\_\_\_    2200 A.D.A. with PM Snack

\_\_\_    2500 A.D.A. with PM Snack

\_\_\_    Clear Liquid*

\_\_\_    Full Liquid*

\_\_\_    Pre-Dialysis [2 gm Na, 2 gm Potassium, 60 gm Protein]

\_\_\_    Dialysis [2 gm Na, 2 gm Potassium, 90 gm Protein, 1500 cc Fluid Restriction]

\_\_\_    Pregnancy

\_\_\_    Nutritional Support Snack    _AM    AND    PM SNACKS_

*Consultation with Registered Dietitian required if diet is for more than 7 days

MARK SCHNABEL, MD
Physician Signature: _____    Date _2/16/05_

ORIG. - Medical Record        Sent to Food Service Dept _____
PINK - Dietitian                                    Name        Date
YELLOW - Food Services      Received by Food Service Dept _____
                                                    Name        Date

8030 Rev. 8/96

## UMASS CORRECTIONAL HEALTH

## "IN HOUSE" CONSULTATION REQUISITION

*SBCC*

Institution:

Name: _Audette, Cloyd_    ID# _W88971_    D.O.B.: _12/31/58_

Request Date: _2-21-05_

### SPECIALTY AREA (circle)

Dental    (Dietary)    Optometry    Mental Health    _____ Urgent
                                                     _✓_ Routine

On Site Clinics:    Orthopedics    Podiatry    Surgical    Other _____

**To Be Completed By Referring Physician**

Reason for Consultation (present illness and history - include summary of current problems(s) MEDS, x-ray and lab studies, etc.)

Ilm given AM snack per KOP
Ilm now does AM+PM snack plus
resource BID. Sid called c questions
related to Rim (2/22). Endo consult done
awaiting appt. 4/5/05 ~ WBauer RN

Todays wt 149# - (Started HCVRx 1/10/05 wt. 160#)

Referring Physician: _____
(Signature & Stamp)

**To Be Completed By Consulting Physician**

Findings (Problems, Diagnosis) and Recommendations (Therapy, Meds, & Studies)

han 3-1-05 PN
note to FS    SAI

Consulting Physician: _____
(Print Name)

Date: _____

Final Diagnosis: _____

8031 Rev. 4/95

MASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

### PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Audette, Lloyd_    ID NUMBER _W80971_    D.O.B. _12/31/58_

INSTITUTION _SBU_    ALLERGIES _Codiene_

DATE _3/7/05_    TIME _11 AM_

<u>ORDERS</u>

_Mu Methdose 20mg  no B10×70_
_(crush + float)_

_noted M Walters CR 3/7/05 1430_

SIGNATURE _M Schnabel NP_    Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

PRINT NAME    **MARK SCHNABEL, NP**

8006 Rev. 4/01

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy: File with Pharmacy Orders

MASS CORRECTIONAL HEALTH

## PHYSICIAN'S ORDER

PRESCRIPTION ORDER - FOR DEPARTMENT OF CORRECTION INSTITUTIONAL USE ONLY

NAME _Audette, Clayp_    ID NUMBER _W8097_    D.O.B. _12/3/15_

INSTITUTION _SBCC_    ALLERGIES _Codene_

DATE _3/7/05_    TIME _11AM_

### ORDERS

IN   Sustiva   600mg   po qHS
Didanosine LA   400mg   po daily    KOOP
Epivir   150mg   po BID
Protonix   40mg   po BID    KOP.

notes for Peter NP 3/8/05 1405

SIGNATURE _M Schnabel_

Interchange is mandatory unless the prescriber writes the words
"no substitution" in this space:

PRINT NAME _MARK SCHNABEL, NP_

Original (White): Retain in Inmate Medical Record
Copy (Yellow): Fax to Pharmacy: File with Pharmacy Orders

UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD

Institution: SBCC

MONTH: Jan          20 05

| START DATE | STOP DATE | INT | DRUG · DOSE MODE · INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/05 | 2/17 | DAC | Peg Intron 0.4 ml SC weekly Monday | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/17 | 2/17 | DAC | Riba Virin 400 mg po every AM + PM × 14 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/3 | 2/17 | DAC | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/3 | 4/5 | DAC | Motrin 600 mg po KOP ×100 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/3 | 4/5 | DAC | Tylenol 650 mg po KOP ×140 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/05 | | DAC | Neurontin T bid KOP | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/31 | | DAC | Colace 100 mg po ×30 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/31 | | DAC | Bid prn | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 1/31 | | DAC | Tums T̄ po prn ×100 3 × Day | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

ALLERGIES: Codeine, Sulfate

| STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|

NS=NO SHOW   DC=DISCONTINUE   R=REFUSED

DOB/INMATE #: 7/22/36 / 58    W80571

LOCATION: N1

NAME: Avdete Llaqol

CMS 0027 Rev. 08/01

12/31/04

SBCC
Institution

# UMASS CORRECTIONAL HEALTH TREATMENT ADMINISTRATION RECORD

MONTH January 20 0_

CMS 8027 Rev. 08/01

| START DATE | STOP DATE | INT | DRUG - DOSE MODE - INTERVAL | HR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/27 | 3/11/05 | | NP Sustiva 600 mg PO at HS X100 | K O P | 12/17 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 11/27 | 3/11/05 | | NP Didanosine EC 400 mg po daily X100 | K O P | 12/30 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 10/14 | 1/24/05 | | NP MVI PO 1 tab daily X100 | K O P | 12/22 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 11/27 | 3/11/05 | | NP Protonix 40 mg PO X100 | K O P | 12/24 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 11/27 | 3/11/05 | | NP Epivir 150 mg PO 2x day X100 | K O P | 12/31 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| 12/17 12/31 | | | NP Methadose 90 mg PO 2x day X08 | K O P | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | | | NP Eosorin Cr/lotion BID | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

| ALLERGIES: Codeine Sulfate | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL | STAFF SIGNATURE | DATE | INITIAL |
|---|---|---|---|---|---|---|---|---|---|

DOB/INMATE #: 12/31/58   W80971

LOCATION: N1

NS=NO SHOW   DC=DISCONTINUE   R=REFUSED

NAME: Audette, Lloyd

Pg 1 of 2

# **EXHIBIT 4**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 05-10403DPW

LLOYD F. AUDETTE,  )
    Plaintiff,  )
      )
V.  )
      )
UMASS CORRECTIONAL HEALTH,  )
    A Commonwealth Medicine Program,  )
    Defendant, and  )
      )
DEPARTMENT OF CORRECTON  )
    Kathleen M. Denney, Commissioner,  )
    Defendant.  )
      )

## AFFIDAVIT OF JAMES A. BELLO

I, James A. Bello, being duly sworn, hereby depose and state the following:

1.    I am a partner at the law firm of Morrison Mahoney, with offices located at 250 Summer Street, Boston, Massachusetts 02210. I am duly licensed to practice law and I am in good standing in the Commonwealth of Massachusetts.

2.    I am counsel for defendant, UMASS Correctional Health ("UMCH"), in the above referenced matter. I have personal knowledge of all facts set forth herein and I am familiar with plaintiff's allegations and the procedural history of this case.

3.    I spoke with Health Service Administrator for the Souza-Baranowski Correctional Center ("SBCC"), Charlie Black, on March 25, 2005. During this telephone conversation, we discussed the status of plaintiff, Lloyd Audette's, medical treatment. Specifically, Mr. Black addressed the five requests included in plaintiff's Motion for a Temporary Ex Parte Restraining Order.

5.    Regarding plaintiff's first request, Mr. Black told me that a podiatrist, Dr. King, recommended plaintiff wear Rockport walking shoes to help remedy his bone spur. Mr. Black noted that Dr. King never filled out a physician's order, requesting that the Department of Correction ("DOC") pay for these shoes. In response to the doctor's recommendation, Mr. Black ordered the Rockport walking shoes for the DOC Canteen. These shoes are now available at the Canteen for plaintiff's purchase at his discretion.

6.    When addressing plaintiff's second request, Mr. Black pointed out that Dr. Stone, the infectious disease specialist at the SBCC, had concerns about treating Mr. Audette with testosterone injections, given his history of HIV and Hepatitis C. Mr. Black informed me that plaintiff Audette was not receiving testosterone upon his arrival at SBCC, in February of 2004. Nevertheless, defendants still scheduled an appointment with the endocrinologist for the near future, so that plaintiff can be evaluated for testosterone therapy.

7,    Mr. Black also noted that when plaintiff meets with the endocrinologist, his third request, for Oxandorlone medication, will also be discussed. Mr. Black informed me that even though Audette never requested this medication from the SBCC, UMCH will still consult with the endocrinologist as to the effectiveness of this type of anabolic steroid treatment.

8.    Mr. Black and I also discussed plaintiff's fifth request for an increase in his methadose medication. Mr. Black mentioned that Dr. Stone expressed concern for plaintiff's health, given that Mr. Audette also receives Sustiva and DDI medication for his Hepatitis C. Specifically, Dr. Stone noted that literature warns of declined efficacy in the Hepatitis C drugs if the level of methadose is too high. Wary about offsetting the

balance in plaintiff's medical treatments, Mr. Black told me that on April 4, 2005, plaintiff will be seen in the Infectious Disease Clinic at which point the issue will be addressed.

9.     The above statements are true and accurate and based upon my personal knowledge.

**SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY**

**THIS** __25__ **DAY OF** _MARCH_, **2005.**

_____
James A. Bello (BBO# 633550)