UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LLOYD F. AUDETTE,<br><br>     Plaintiff,<br><br>  v.<br><br>UMASS CORRECTIONAL HEALTH PROGRAM, a program of the UNIVERSITY OF MASSACHUSETTS MEDICAL SCHOOL; KATHLEEN M. DENNEHY, Commissioner of Correction; LOIS RUSSO, Superintendant of Souza-Baranowski Correctional Center, and her predecessors and successors; AUGUSTIN ENAW, M.D.; LORRAINE HAZARD, M.D.; and CHARLIE BLACK,<br><br>     Defendants. | CIVIL ACTION<br>NO. 05-10403-DPW |

## MOTION TO AMEND COMPLAINT

For the reasons set forth below, plaintiff, Lloyd F. Audette ("Mr. Audette"), hereby moves pursuant to Rules 15(a) and 15(d) of the Federal Rules of Civil Procedure for leave to amend his Amended Complaint, filed on August 26, 2005. A copy of the proposed Second Amended Complaint is attached as Exhibit A.

As grounds for this motion, Mr. Audette states as follows:

1.  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." In interpreting the rule, the Supreme Court has counseled that:

> In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the Rules require, be 'freely given.'

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

2.      Mr. Audette is an inmate at Souza-Baranowski Correctional Center (SBCC). In February 2005, Mr. Audette filed a Complaint with the Court regarding certain disputes over his medical treatment.  In August 2005, Mr. Audette filed an Amended Complaint to add certain claims that had arisen between February and May 2005 concerning the treatment of his human immunodeficiency virus (HIV) and hepatitis C (HCV) conditions, as well as the deliberate indifference to Mrt. Audette's painful neuropathy condition between April and May 2005.

3.      These claims required extensive discovery to establish the individuals responsible for the treatment of Mr. Audette's HIV and HCV conditions.  Mr. Audette learned in August 2006 that Augustin Enaw, M.D., the medical director at SBCC, claims to have relied entirely on the recommendation of Ioana Bica, M.D., a doctor at the Lemuel Shattuck Hospital co-infection clinic, in connection with the treatment of Mr. Audette's HCV condition, and David R. Stone, M.D., also a doctor at Lemuel Shattuck Hospital, in connection with the treatment of Mr. Audette's HIV condition.

4.      These claims also required extensive discovery to establish the individuals involved in an April 2005 meeting of UMass Correctional Health's so-called "Pain Management Committee."  At the April 2005 meeting of that committee, although aware that Mr. Audette suffered from a painful neuropathy condition, members of the committee deferred treatment of that condition until the next meeting in May 2005.  Ultimately, discovery revealed that it is more likely than not that Philip Tavares, M.D.; Mark Schnabel, a nurse practitioner; and Angela D'Antonio, also a nurse practitioner, all Pain Mangement Committee members, were present at the meeting, and none of them took any steps in the month after the meeting to investigate or alleviate Mr. Audette's painful condition.

5.      Mr. Audette has acted promptly and is acting in good faith by naming Dr. Bica, Dr. Stone, Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio as new defendants in this matter.  Mr. Audette has conducted discovery in this matter diligently, but due to scheduling

-2-

and coordination issues, depositions of three of the five of these individuals have only been conducted within the past three weeks.

6.      Mr. Audette also seeks to add the Department of Correction as a defendant for his claim under the Americans with Disabilities Act due, in part, to recent developments in the law that create some questions as to the appropriate defendant in these sorts of claims.[1] *See Kiman v. New Hampshire Dep't of Correction*, 451 F.3d 274, 290 (1st Cir. June 28, 2006) (following recent Supreme Court precedent that ADA abrogates state immunity and deferring question of individual liability under statute).

7.      None of these parties will be prejudiced by the amendment of this Complaint. Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio are employees of UMass Correctional Health, which is already a defendant in this case.  Similarly, the Department of Correction has participated in this matter from the outset, because Kathleen Dennehy, Commissioner of Correction, and Lois Russo, Superintendent of SBCC, are named defendants.  Mr. Audette's claims against Dr. Bica and Dr. Stone also are made well within the statute of limitations for negligence claims.   None of the defendants have taken any depositions in this matter, including the deposition of the Plaintiff, as of November 17, 2006.[2]

---

[1]  On November 22, 2006, Mr. Audette and the Department of Correction reached an agreement in principle to settle all claims against the current and proposed DOC defendants. The parties are finalizing the terms of that settlement, and anticipate that they will finalize that settlement in advance of the Court's consideration of this motion to amend.  Once that settlement is finalized, Mr. Audette intends to file a stipulation of dismissal of all claims made against the current DOC defendants in the First Amended Complaint, and will revise the Second Amended Complaint to eliminate all claims against the current and proposed DOC defendants, as well as claims against all parties under the Americans with Disabilities Act.

[2]  The parties have agreed that Plaintiff Mr. Audette's deposition may be taken outside of the fact discovery period cutoff date of November 28, 2006.

For the foregoing reasons, Mr. Audette respectfully requests that this Court grant his Motion to Amend.

## LOCAL RULE 7.1(A)(2) CERTIFICATION

Undersigned counsel hereby certifies that he conferred with counsel for Defendant, UMass Correctional Health Program, on November 16, 2006, and with counsel for Defendant, Department of Corrections, on November 16, 2006, in an attempt to narrow the issues presented in this motion.

## LOCAL RULE 15.1(b) CERTIFICATION

Undersigned counsel hereby certifies that a copy of this Motion to Amend Complaint was served on all proposed additional parties at least ten days in advance of filing, along with a separate document stating the date on which the motion will be filed.

Respectfully submitted,

**LLOYD F. AUDETTE,**

By his attorneys,


*/s/ Brandon L. Bigelow*
Donald J. Savery, BBO #564975
Rheba Rutkowski, BBO #632799
Brandon L. Bigelow, BBO #651143
T. Peter R. Pound, BBO #657378
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: November 28, 2006

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true copy of the above document was served upon counsel of record for each other party and upon counsel for proposed new defendants via hand delivery on November 17, 2006.

*/s/ Brandon L. Bigelow*

Brandon L. Bigelow

# EXHIBIT A - PROPOSED COMPLAINT

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LLOYD F. AUDETTE, )<br><br>Plaintiff, )<br><br>v. )<br><br>UMASS CORRECTIONAL HEALTH PROGRAM, a )<br>program of the UNIVERSITY OF )<br>MASSACHUSETTS MEDICAL SCHOOL; )<br>MASSACHUSETTS DEPARTMENT OF )<br>CORRECTION; KATHLEEN M. DENNEHY, )<br>Commissioner of Correction; LOIS RUSSO, )<br>Superintendent of Souza-Baranowski Correctional )<br>Center, and her predecessors and successors; )<br>AUGUSTIN ENAW, M.D.; DAVID R. STONE, )<br>M.D.; IOANA BICA, M.D.; PHILIP TAVARES, )<br>M.D.; MARK SCHNABEL; and ANGELA )<br>D'ANTONIO; )<br><br>Defendants. )<br>) | CIVIL ACTION<br>NO. 05-10403-DPW |

### <u>SECOND AMENDED COMPLAINT</u>

This is a civil action to redress the deprivation by Defendants of rights secured to Plaintiff, Lloyd F. Audette, an inmate at the Souza-Baranowski Correctional Center in Shirley, Massachusetts, by the Constitutions and laws of the United States and the Commonwealth of Massachusetts, as well as for medical malpractice. Defendants, UMass Correctional Health, Augustin Enaw, M.D., David R. Stone, M.D.; and Ioana Bica, M.D., negligently caused Mr. Audette to receive medications or allowed Mr. Audette to continue to receive medications in a dangerous combination that resulted in serious physical harm and emotional distress to Mr. Audette. Even as Mr. Audette suffered the effects of this dangerous combination, fearing that the end of his life was near, defendants Philip Tavares, M.D., Mark Schnabel, and Angela D'Antonio demonstrated deliberate indifference to Mr. Audette's painful neuropathy, allowing him to linger without adequate pain management therapy for over a month.

# EXHIBIT A - PROPOSED COMPLAINT

Finally, UMass Correctional Health Program, the contractual medical provider at Souza-Baranowski Correctional Center, and its personnel refused to provide medically necessary shoes despite the repeated recommendations of specialists and defendants Massachusetts Department of Correction, Kathleen Dennehy, and Lois Russo, also failed to ensure that Mr. Audette obtained the medically necessary footwear. These actions constitute a failure to provide a reasonable accommodation for Mr. Audette's disability and violate the First, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983; Article 114 of the Declaration of Rights of the Constitution of the Commonwealth of Massachusetts; and the Americans with Disabilities Act, 42 U.S.C. §§ 12132 et seq. Mr. Audette seeks prospective injunctive relief, compensatory and punitive damages, and attorneys' fees and costs, as authorized by 42 U.S.C. § 1988.

## Parties

1.     Plaintiff, Lloyd F. Audette ("Mr. Audette"), is currently incarcerated at the Souza-Baranowski Correctional Center in Shirley, Massachusetts ("SBCC"), a penal institution operated by the Massachusetts Department of Correction ("DOC").

2.     Defendant UMass Correction Health Program ("UMass Correctional Health") is a program of the University of Massachusetts Medical School ("UMMS"), with a principal place of business in Westborough, Massachusetts. Since January 1, 2003, UMass Correctional Health has provided medical services to inmates in the custody of the DOC pursuant to an agreement between UMMS and the DOC.

3.     Defendant, Massachusetts Department of Correction ("DOC"), is the state government agency responsible for operating penal institutions in the Commonwealth of Massachusetts.

4.     Defendant, Kathleen M. Dennehy ("Ms. Dennehy"), is presently Commissioner of Correction for the Commonwealth of Massachusetts, and, at all times relevant to this Second Amended Complaint, was acting within the scope of her employment in her capacity as

# EXHIBIT A - PROPOSED COMPLAINT

Commissioner of Correction.  She is directly responsible for the appointment, supervision, and training of DOC employees, and is responsible for ensuring that prisons in Massachusetts are operated and administered in accordance with federal and state law.  She is responsible for the promulgation of all policies, rules, and regulations for the prison system, including medical care for prisoners, disciplinary rules, and sanctions imposed.

5.      Defendant, Lois Russo ("Ms. Russo"), is presently Superintendent of the SBCC, and, at all times relevant to this Second Amended Complaint, was acting within the scope of her employment in her capacity as Superintendent.  She is directly responsible for the management and operation of the SBCC, including responsibility for the care, custody and treatment of all SBCC prisoners; for the enforcement of rules and regulations promulgated by the Commissioner of Correction; and for ensuring the institution is managed and operated in accordance with federal and state law.

6.      Defendant Augustin Enaw, M.D. ("Dr. Enaw") is the medical director at SBCC affiliated with UMass Correctional Health.  At all times relevant to this Second Amended Complaint, Dr. Enaw provided medical care to inmates at SBCC, including Mr. Audette.

7.      Defendant David R. Stone, M.D. ("Dr. Stone") is a medical doctor affiliated with Tufts Medical Center and Lemuel Shattuck Hospital.  At all times relevant to this Second Amended Complaint, Dr. Stone treated inmates at SBCC who are infected with the human immunodeficiency virus ("HIV"), including Mr. Audette.

8.      Defendant Ioana Bica, M.D. ("Dr. Bica") is a medical doctor affiliated with the Boston Medical Center.  At all times relevant to this Second Amended Complaint, Dr. Bica was affiliated with Lemuel Shattuck Hospital and provided consultation services in connection with the treatment of inmates in the Department of Correction system who are infected with the Hepatitis C virus ("HCV").

# EXHIBIT A - PROPOSED COMPLAINT

9.　　Defendant Philip Tavares, M.D. ("Dr. Tavares") is a medical doctor.  At all times relevant to this Second Amended Complaint, Dr. Tavares was affiliated with UMass Correctional Health and provided medical care to inmates at SBCC, including Mr. Audette.

10.　　Defendant Mark Schnabel ("Mr. Schnabel") is a nurse practitioner at SBCC.  At all times relevant to this Second Amended Complaint, Mr. Schnabel provided medical services to inmates at SBCC, including Mr. Audette.

11.　　Defendant Angela D'Antonio ("Ms. D'Antonio") is a nurse practitioner at SBCC. At all times relevant to this Second Amended Complaint, Ms. D'Antonio provided medical services to inmates at SBCC, including Mr. Audette.

## Jurisdiction and Venue

12.　　The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction), 1343 (civil rights jurisdiction), and 1367 (supplemental jurisdiction).

13.　　Venue is proper pursuant to 28 U.S.C. § 1391(b).

## Factual Allegations

### Co-administration of Videx and Ribavirin

14.　　In October 2001, Mr. Audette became a patient in the DOC healthcare system. As of January 1, 2003, the DOC contracted with UMMS through UMass Correctional Health to provide medical services at DOC facilities, including the SBCC.

15.　　At the time he became a patient in the DOC healthcare system, Mr. Audette was infected with and receiving treatment for, among other things, HIV.  Mr. Audette was diagnosed as HIV-positive in the late 1980s, and has been receiving treatment for that condition ever since. At the time he became a patient in the DOC healthcare system, Mr. Audette had been diagnosed as being infected with HCV.

16.　　On or about January 3, 2005, Dr. Enaw ordered that Mr. Audette begin treatment for his HCV condition the following week.  Dr. Enaw prescribed a combination therapy of

# EXHIBIT A - PROPOSED COMPLAINT

pegylated interferon ("Peg-Intron") and Ribavirin (together, "HCV combination therapy") for Mr. Audette in connection with that treatment.

17.     At the time Dr. Enaw issued this order, Mr. Audette had already been receiving a combination of medications to suppress the viral load of HIV in his body.  These medications included ddI (also referred to as "Videx"), 3TC (also referred to as "Epivir"), and EFV (also referred to as "Sustiva").  The combination of these drugs sometimes is referred to colloquially as an "anti-HIV cocktail."

18.     In making this order, Dr. Enaw relied upon a recommended treatment plan by Dr. Bica from January 2004.  Dr. Bica had seen Mr. Audette at Lemuel Shattuck Hospital in January 2004 and had recommended that Mr. Audette begin HCV combination therapy.

19.     At the time Dr. Enaw ordered that Mr. Audette receive HCV combination therapy together with his anti-HIV cocktail, it was recognized in the medical community that the antiretroviral drug ddI should not be coadministered with the anti-HCV drug Ribavirin because of an increased risk of severe lactic acidosis, peripheral neuropathy, and pancreatitis.

20.     Peripheral neuropathy refers to a variety of painful nerve conditions that result from nerve damage.  Lactic acidosis, an excess of lactic acid in the blood, can cause significant weight loss, as well as cellular damage.

21.     Although aware that Mr. Audette was already receiving ddI in connection with his treatment for HIV, and that upon commencing combination therapy for HCV Mr. Audette would be receiving Ribavirin, Dr. Bica did not recommend any change to Mr. Audette's HIV therapy prior to commencing the administration of combination therapy to Mr. Audette.

22.     As recommended by Dr. Bica and ordered by Dr. Enaw, on or about January 10, 2005, Mr. Audette began HCV combination therapy, including administration of drug Ribavirin. At the same time, Mr. Audette continued to receive the antiretroviral drug ddI as part of his anti-HIV cocktail.

# EXHIBIT A - PROPOSED COMPLAINT

23.    At the time Mr. Audette began receiving HCV combination therapy, he weighed 160 pounds.  By February 14, 2005, Mr. Audette had lost approximately ten pounds, and he became concerned that his weight loss may be symptomatic of the onset of AIDS Wasting Syndrome.  Mr. Audette also feared that his weight loss would interfere with his ability to fight off infections.

24.    In February 2005, Mr. Audette requested that his weight loss be addressed by UMass Correctional Health staff.  He noted that he had reported to the SBCC in February 2004 weighing 178 pounds.

25.    After orthopedic surgery in August 2004, Mr. Audette's weight dropped, and by October 2004 he weighed 164 pounds.  His weight loss appeared to have stabilized around 160 pounds in January 2005, but after beginning HCV combination therapy, Mr. Audette's weight again began to drop.

26.    Mr. Audette continued to express concern about his weight loss between February and March 2005, and became increasingly concerned that he was suffering the onset of AIDS Wasting Syndrome, a condition characterized by dramatic weight loss.  Throughout this period, Mr. Audette suffered severe emotional distress related to his poor medical condition.

27.    On March 8, 2005, Mr. Audette was seen by Dr. Stone during a quarterly "infectious disease clinic" at SBCC.  In connection with the infectious disease clinic, Dr. Stone reviewed Mr. Audette's medical records.

28.    Although Dr. Stone noted that Mr. Audette had started HCV combination therapy, including Ribavirin, in January 2005, and knew that Mr. Audette already was receiving ddI, Dr. Stone did not adjust Mr. Audette's HIV medications.

29.    Dr. Stone did not make any adjustment to Mr. Audette's HIV medications even though he had the ability to do so, and even though he was concerned about the dangers of co-administration of ddI and Ribavirin.

# EXHIBIT A - PROPOSED COMPLAINT

30.     Dr. Stone also did not discuss the co-administration of ddI and Ribavirin with any of Mr. Audette's medical care providers, including, without limitation, Dr. Enaw, Dr. Tavares, or Dr. Bica.

31.     By March 28, 2005, a registered nurse at the SBCC noted that Mr. Audette's weight had dropped from 160 pounds in January 2005 to only 142 pounds in late March 2005. Mr. Audette was given extra snacks and a dietary supplement in an unsuccessful effort to stabilize his weight loss, but UMass Correctional Health medical staff undertook no efforts to determine why Mr. Audette was experiencing such a precipitous weight decline.

32.     On or about April 16, 2005, Mr. Audette reported that he was losing vision in his right eye.  He was not seen by a member of the UMass Correctional health staff until two days later, on April 18, 2005.

33.     On April 18, 2005, Mr. Audette was seen by a registered nurse at the SBCC.  The nurse reported Mr. Audette's complaint to a medical doctor, who stated that Mr. Audette's condition was a medical emergency.

34.     The medical doctor immediately suspended Mr. Audette's HCV combination therapy, and directed that Mr. Audette be referred to the on-call doctor.  The on-call doctor confirmed that Mr. Audette should not receive any further HCV combination therapy, and suggested that Mr. Audette be scheduled for an appointment to see a doctor the following day.

35.     On April 19, 2005, UMass Correctional Health referred Mr. Audette to the Lemuel Shattuck Hospital in Boston, where he was examined by a member of staff in the eye clinic.  The member of staff told Mr. Audette that he could have a detached retina caused by HCV combination therapy.

36.     On April 21, 2005, UMass Correctional Health referred Mr. Audette to the New England Medical Center, where his eye condition was again examined.  An examination by Rubin W. Kim, M.D. ("Dr. Kim"), a member of the New England Medical Center staff, indicated that Mr. Audette had suffered a detached retina in his right eye, and showed symptoms

# EXHIBIT A - PROPOSED COMPLAINT

of recent damage to his left eye as well.  Dr. Kim also concurred with the decision to suspend HCV combination therapy.

37.     On May 16, 2005, Howard Libman, M.D., a doctor retained by Mr. Audette's court-appointed counsel to assess Mr. Audette's medical condition, noted in a report submitted to the Court that the antiretroviral drug ddI and the anti-HCV drug Ribavirin should not be coadministered because of the increased risk of, among other things, severe lactic acidosis.

38.     Dr. Bica did not recommend, and Dr. Enaw did not order, that Mr. Audette's lactic acid levels be monitored, and UMass Correctional Health staff did not monitor Mr. Audette's lactic acid levels, while co-administering ddI and Ribavirin to Mr. Audette between January 2005 and April 2005.

39.     Dr. Bica did not recommend, and Dr. Enaw did not order, that UMass Correctional Health staff monitor Mr. Audette for clinical indications associated with lactic acidosis.

40.     The lactic acid level of Mr. Audette's blood sample on May 11, 2005 – almost one month after suspension of co-administration of ddI and Ribavirin – was 4.4 mmol/L.  The lactic acid of Mr. Audette's blood sample on May 20, 2005 was 3.0 mmol/L.  A normal level is approximately less than 2.1 mmol/L, according to standards used by the Lemuel Shattuck Hospital laboratory.

41.     Mr. Audette gained ten pounds within a short time after UMass Correctional Health personnel suspended co-administration of HCV combination therapy with the anti-HIV cocktail.  Mr. Audette's anti-HIV cocktail has since been altered to eliminate the antiretroviral drug ddI.

42.     The co-administration of ddI and Ribavirin to Mr. Audette between January 2005 and April 2005 induced severe lactic acidosis in Mr. Audette and caused him significant physical harm, including dramatic weight loss, a known side effect of lactic acidosis, as well as emotional distress.

# EXHIBIT A - PROPOSED COMPLAINT

### *Medically necessary shoes*

43.     At the time he became a patient in the DOC healthcare system, Mr. Audette also had a history of multiple traumatic injuries, and suffered serious pain when walking as a result of those injuries, despite a number of orthopedic surgeries.  At the time he became a patient of the DOC healthcare system, Mr. Audette wore "Rockport" brand walking shoes in order to alleviate the serious pain he experienced when he walked.

44.     While he was incarcerated at MCI-Norfolk from March 2003 to February 2004, Mr. Audette was permitted to wear his "Rockport" walking shoes.  Just prior to his transfer from MCI-Norfolk to the SBCC, however, Mr. Audette's shoes were confiscated, and Mr. Audette was forced to wear the standard shoes issued by the DOC.  These shoes did not alleviate the serious pain Mr. Audette experienced when he walked.

45.     In July 2004, Mr. Audette filed a grievance requesting that he be seen by an orthopedic surgeon concerning pain in his left knee.  He reported that he had previously been diagnosed with arthritis and debris "floating around in the knee," and that, while he had been scheduled twice for consultation with an orthopedic surgeon, he had not yet been seen.  At that time, Mr. Audette requested yet again that he be scheduled for a consultation with an orthopedic surgeon.

46.     In October 2004, Mr. Audette reported via a "sick slip" that his "left foot keeps locking and clicking, extreme pain, left knee keeps locking and clicking and grinding, right ankle keeps swelling . . . both hips keep locking."  Mr. Audette asked to see an orthopedic surgeon concerning these issues.

47.     In early December 2004, Mr. Audette complained that swelling and lumps in his feet were rubbing painfully against the standard-issue shoes issued by the DOC, and requested that he be issued orthopedic footwear.  On or about January 18, 2005, Mr. Audette was seen by a podiatrist pursuant to that request.

# EXHIBIT A - PROPOSED COMPLAINT

48.     The podiatrist diagnosed Mr. Audette with bone spurs in his left foot, and recommended that Mr. Audette be issued "Rockport" walking shoes to alleviate the pain that Mr. Audette experienced in his left foot associated with those bone spurs.

49.     On or about January 24, 2005, a nurse practitioner at the SBCC issued a medical order for "Rockport" walking shoes to be issued by the SBCC canteen.

50.     On January 27, 2005, pursuant to the recommendation of the podiatrist and the January 24, 2005 medical order, Mr. Audette requested that the canteen issue "Rockport" walking shoes to him at no cost.

51.     Despite the recommendation by the podiatrist and the January 24, 2005 medical order, UMass Correctional Health rejected Mr. Audette's request for "Rockport" walking shoes because, according to UMass Correctional Health, the podiatrist had only recommended "Rockport" walking shoes, but had not ordered them.

52.     On or about February 8, 2005, Mr. Audette submitted a request for reasonable accommodation to the duty superintendent at the SBCC, noting that the pain he experienced in his left foot interfered with his ability to walk or to exercise.  Mr. Audette never received a response to this request.

53.     On April 12, 2006, Mr. Audette was seen by an orthopedic specialist, who recommended excision of extosis, a painful condition in Mr. Audette's left foot.

54.     The medical director at SBCC at the time, Dr. Tavares, at first decided to hold off on that surgery until Mr. Audette recovered from an unrelated knee surgery, and ultimately determined without explanation on June 20, 2006 that the recommendation for excision of extosis was simply not approved.

55.     Instead, Dr. Tavares referred Mr. Audette to another specialist and asked for a recommendation for helpful footwear for Mr. Audette.  On July 3, 2006, that specialist recommended supportive shoes via the SBCC canteen.

# EXHIBIT A - PROPOSED COMPLAINT

56.     On July 18, 2006, that specialist reiterated his recommendation that Mr. Audette receive Rockport walking shoes, and informed UMass Correctional Health that Mr. Audette could not afford to pay for those shoes himself.

57.     To date, Mr. Audette has not been provided "Rockport" walking shoes by UMass Correctional Health or the DOC, despite the fact that those shoes were ordered by UMass Correctional Health personnel and repeatedly recommended by specialists engaged by UMass Correctional Health.

58.     Mr. Audette continues to suffer significant pain in his left foot, which interferes with his ability to walk or use the exercise facilities at the SBCC.

59.     Concerned about his serious medical health issues, and believing that the DOC and UMass Correctional Health staff were deliberately indifferent to his serious medical needs and were discriminating against him on the basis of his disability, Mr. Audette filed the above-captioned action in the United States District Court for the District of Massachusetts on or about February 16, 2005.

### _Deliberate indifference to pain management issues_

60.     In March 2005, Mr. Audette reported that the pain medication he was receiving, methadose, a narcotic drug, was not effective in alleviating the pain he suffered from neuropathy. He shared articles he had read with UMass Correction Health medical staff that indicated that the effect of methadose may be reduced when co-administered with Sustiva, as well as articles that suggested that methadose may reduce the efficacy of ddI.

61.     On March 31, 2005, Mr. Audette was informed by a staff physician, Lorraine Hazard, M.D., that he was being taken off of methadose.  She ordered that Mr. Audette be tapered off methadose over a two-week period to minimize the effect of withdrawal from a narcotic drug and prescribed Voltaren, an anti-inflammatory drug, for pain.  She informed Mr. Audette that after two weeks, he would be taken off of all pain medication.

# EXHIBIT A - PROPOSED COMPLAINT

62.     On April 12, 2005, Mr. Audette saw Dr. Hazard once again.  Mr. Audette reported that the Voltaren made him nauseous, and told Dr. Hazard that he thought the end of his life was approaching because of his dramatic weight loss and his general feeling of poor health.  Dr. Hazard acknowledged Mr. Audette's complaints, and told Mr. Audette that she would discontinue the Voltaren immediately.

63.     Because of Mr. Audette's pain management therapy issues, his case was referred to UMass Correctional Health's so-called "Pain Management Committee" at SBCC for consideration at the next meeting in late April 2005.  The Pain Management Committee in turn would consider Mr. Audette's condition and recommend a new pain management therapy for Mr. Audette.

64.     The Pain Management Committee met on April 27, 2005.  Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio, among others, were present at the meeting.  Although Mr. Audette's case was scheduled for discussion, the Pain Management Committee did not discuss it because a pharmacist had not prepared the case, allegedly due to technical difficulties.

65.     Despite their awareness that Mr. Audette suffered painful neuropathy, and despite their awareness that Mr. Audette was not receiving adequate pain management therapy, UMass Correctional Health's Pain Management Committee, Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio, among others, decided they would discuss Mr. Audette's case at the next Pain Management Committee meeting.  No change was made to Mr. Audette's pain management therapy.

66.     The next Pain Management Committee meeting did not occur until May 26, 2005. Between approximately April 27, 2005 and at least May 26, 2005, UMass Correctional Health's Pain Management Committee, Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio made no efforts to identify an alternative pain management therapy for Mr. Audette.  It was not until after the May 26, 2005 Pain Management Committee meeting that any efforts were made to address Mr. Audette's serious pain issues.

# EXHIBIT A - PROPOSED COMPLAINT

## COUNT I
### (Deliberate Indifference and Civil Conspiracy in Violation of Federal Constitutional Rights – Against Defendants UMass Correctional Health, Tavares, Schnabel, and D'Antonio)

67.     Mr. Audette incorporates each of the allegations of foregoing paragraphs as if fully set forth herein.

68.     The actions and inactions of UMass Correctional Health, Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio demonstrate deliberate indifference to the serious pain management therapy needs of Mr. Audette, and constitute cruel or unusual punishment that unlawfully deprives Mr. Audette of the rights guaranteed to him by the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

69.     UMass Correctional Health, Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio acted and failed to act jointly and in concert with each other and with others, constituting civil conspiracy to violate rights, privileges, and immunities secured to Mr. Audette by the First, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

70.     As alleged above, Mr. Audette has suffered injuries as a result of the acts and failures to act by UMass Correctional Health, Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio, for which Dr. Tavares, Mr. Schnabel, and Ms. D'Antonio are liable in their individual capacities under the provisions of 42 U.S.C. § 1983 in an amount to be proven at trial and with regard to which Mr. Audette seeks prospective injunctive relief against UMass Correctional Health.

## COUNT II
### (Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12132 et seq. – Against Massachusetts Department of Correction, Dennehy, Russo, and UMass Correctional Health)

71.     Mr. Audette incorporates each of the allegations of foregoing paragraphs as if fully set forth herein.

72.     Mr. Audette is an individual with a disability as defined by the Americans with Disabilities Act.

73.     DOC, Ms. Dennehy, Ms. Russo, and UMass Correctional Health have discriminated against Mr. Audette by failing to provide reasonable accommodation for Mr.

# EXHIBIT A - PROPOSED COMPLAINT

Audette's disabilities so that Mr. Audette may enjoy the benefits of services, programs and activities available to the general inmate population.

74.    DOC, Ms. Dennehy, Ms. Russo, and UMass Correctional Health have discriminated against Mr. Audette on the basis of his disabilities by treating him in a manner disparate to that of other similarly classified inmates.

75.    The actions of DOC, Ms. Dennehy, Ms. Russo, and UMass Correctional Health. deprive Mr. Audette of his right to be free from discrimination on the basis of disability as guaranteed by Article 114 of the Massachusetts Constitution and the Americans with Disabilities Act, 42 U.S.C. § 12132 et seq.

76.    As alleged above, the injuries suffered by Mr. Audette as a result of these acts and failures to act are of a continuing nature, and for which there is no adequate remedy at law. Accordingly, the DOC, Ms. Dennehy, Ms. Russo, and UMass Correctional Health should be ordered to comply with the specialists' recommendations and the order by medical personnel at SBCC and issue Mr. Audette orthopedic footwear without cost.

77.    In addition, the DOC, Ms. Dennehy, Ms. Russo, and UMass Correctional Health are liable to Mr. Audette for compensatory damages, in an amount to be proven at trial, as well as attorneys' fees and costs.

## COUNT III
**(Violation of Federal Constitutional Rights for Failure to Train and Supervise – Against Defendants Dennehy and Russo, in their individual capacities as to claims for monetary relief, and in their official capacities as to claims for prospective injunctive relief)**

78.    Mr. Audette incorporates each of the allegations of foregoing paragraphs as if fully set forth herein.

79.    Defendants Ms. Dennehy and Ms. Russo were and are responsible for the training and supervision of correctional officers and other personnel at the SBCC, and were and are obligated by law to ensure that Mr. Audette, while in custody at the SBCC, was and is treated in

# EXHIBIT A - PROPOSED COMPLAINT

a manner consistent with the Constitution and laws of the United States and the Commonwealth of Massachusetts.

80.    The  acts and omissions of Ms. Dennehy and Ms. Russo as set forth above constitute deliberate indifference to Mr. Audette's constitutional rights and to a substantial risk of serious harm to Mr. Audette in violation of rights secured to him by the First, Eighth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

81.    The Defendants' acts and failures to act also violate Mass. Gen. Laws c. 124, § l; Mass. Gen. Laws c. 125, § 12 and Mass. Gen. Laws c. 127, § 32.

82.    As alleged above, Mr. Audette has suffered injuries as a result of the Defendants' acts and omissions, for which the Defendants are liable in their individual capacities under the provisions of 42 U.S.C. § 1983 in an amount to be proven at trial.

83.    As alleged above, the injuries suffered by Mr. Audette as a result of the Defendants' acts and failures to act are of a continuing nature, and for which there is no adequate remedy at law.  Accordingly, the Defendants in their official capacities should be ordered to ensure that Mr. Audette receives proper medical care.

## COUNT IV
### (Negligence –Against UMass Correctional Health, Enaw, Stone, Bica)

84.    Mr. Audette incorporates each of the allegations of foregoing paragraphs as if fully set forth herein.

85.    As providers of medical care at SBCC, UMass Correctional Health and Dr. Enaw had a duty to provide adequate medical care to Mr. Audette, an inmate under their care.

86.    As a provider of medical care and consultation services to medical care providers at SBCC in connection with the treatment of HCV, Dr. Bica knew medical care providers at SBCC would act on her recommendations and had a duty to provide adequate recommendations to medical care providers at SBCC.

# EXHIBIT A - PROPOSED COMPLAINT

87.     As a provider of HIV medical care at SBCC, Dr. Stone had a duty to provide adequate HIV medical care to Mr. Audette, an inmate under his care in connection with HIV treatment.

88.     As alleged above, UMass Correctional Health, Dr. Enaw, Dr. Bica, and Dr. Stone breached their duty of care to Mr. Audette.

89.     As a direct and proximate result of the negligence of the Defendants, Mr. Audette suffered serious physical harm and emotional distress.

90.     On December 7, 2005, by way of certified mail (return receipt requested), Mr. Audette presented his claims, pursuant to Mass. Gen. Laws c. 258 §§ 1, 2, and 4, to Secretary Edward A. Flynn, Executive Office of Public Safety and to Attorney General Thomas Reilly. To this date, Mr. Audette has received no substantive response to his presentment of claims.

## COUNT V
### (Negligent Infliction of Emotional Distress – Against
### UMass Correctional Health, Enaw, Stone, Bica)

91.     Mr. Audette incorporates each of the allegations of foregoing paragraphs as if fully set forth herein.

92.     As alleged above, the conduct of UMass Correctional Health, Dr. Enaw, Dr. Bica, and Dr. Stone was negligent and was the direct and proximate cause of severe emotional distress suffered by Mr. Audette.

93.     UMass Correctional Health, Dr. Enaw, Dr. Bica, and Dr. Stone knew or should have known that their conduct would have caused Mr. Audette emotional distress, which has resulted in physical harm to him.

94.     In view of the conduct of UMass Correctional Health, Dr. Enaw, Dr. Bica, and Dr. Stone, as alleged above, a reasonable person would have suffered emotional distress under such circumstances.

# EXHIBIT A - PROPOSED COMPLAINT

95.     As a direct and proximate result of the negligent conduct of UMass Correctional Health, Dr. Enaw, Dr. Bica, and Dr. Stone, Mr. Audette suffered severe emotional distress, mental suffering, physical harm, and damages, in an amount to be proven at trial.

96.     On December 7, 2005, by way of certified mail (return receipt requested), Mr. Audette presented his claims, pursuant to Mass. Gen. Laws ch. 258 §§ 1, 2, and 4, to Secretary Edward A. Flynn, Executive Office of Public Safety and to Attorney General Thomas Reilly. To this date, Mr. Audette has received no substantive response to his presentment of claims.

# EXHIBIT A - PROPOSED COMPLAINT

### REQUEST FOR RELIEF

Wherefore, the Plaintiff respectfully requests that this Court:

a) Issue a permanent injunction enjoining the Defendants from further violations of the Plaintiff's civil rights;

b) Issue an order requiring that UMass Correctional Health, the Commissioner of Corrections, and the Superintendent of Souza Baranowski Correctional Center ensure that the Plaintiff receives adequate medical treatment for HIV, HCV, and pain management;

c) Issue an order requiring that UMass Correctional Heath, the DOC, the Commissioner of Corrections, and the Superintendent of Souza Baranowski Correctional Center ensure that Plaintiff receives the orthopedic footwear that was specifically ordered for him;

d) Award Plaintiff compensatory damages for physical and emotional injury and for violation of Plaintiff's rights;

e) Award Plaintiff punitive damages from each and every Defendant in their individual capacities;

f) Award Plaintiff reasonable costs and attorneys' fees; and

g) Grant Plaintiff all other relief as this Court may deem just and equitable.

# EXHIBIT A - PROPOSED COMPLAINT

Respectfully submitted,

**LLOYD F. AUDETTE,**

By his attorneys,

*/s/ Brandon L. Bigelow*
Donald J. Savery, BBO #564975
Rheba Rutkowski, BBO #632799
Brandon L. Bigelow, BBO #651143
T. Peter R. Pound, BBO #657378
**BINGHAM MCCUTCHEN LLP**
150 Federal Street
Boston, MA  02110-1726
(617) 951-8000

Dated: November 28, 2005